# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| hibu INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-1055-JTM-TJJ |
| | ) | |
| CHAD PECK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Compel Discovery (ECF No. 32). Pursuant to Fed. R. Civ. P. 37(a) and D. Kan. Rule 37.1, Defendant asks the Court to overrule certain of Plaintiff's objections to Defendant's First Interrogatories, order Plaintiff to redesignate certain documents it has produced as "Confidential" rather than "Confidential-Attorney's Eyes Only," and compel Plaintiff to produce computations of its damages.   As set forth below, the Court grants Defendant's motion.

## I.    Relevant Background

On April 28, 2016, both parties served initial Rule 26 disclosures.[1]   In an email dated April 29, Defendant's counsel indicated he had reviewed Plaintiff's initial disclosures and found no computation of Plaintiff's alleged damages.[2]   Defendant also served his First Request for Production of Documents to Plaintiff and its First Interrogatories to Plaintiff on that date.[3]   On

---

[1] *See* ECF Nos. 7, 8.

[2] ECF No. 33-1 at 21.   Defendant's counsel continued to inquire about this issue in subsequent emails contained in Exhibit 1 (ECF No. 33-1).

[3] *See* ECF No. 9.

June 3, 2016, Plaintiff served its responses to both sets of written discovery.[4]   That same day, Defendant's counsel sent Plaintiff's counsel an email detailing several concerns he had with the sufficiency of Plaintiff's responses and the appropriateness of various objections, and suggesting that counsel confer the following week.[5]   Plaintiff's counsel contacted Defendant's counsel on June 16 to indicate he hoped to have more information within a day or two, but when Defendant's counsel had heard nothing by June 21, he sent another email to Plaintiff's counsel.[6]   Counsel exchanged additional emails on June 23 to 25.[7]   On July 6, Defendant filed a motion seeking additional time in which to file a motion to compel, and the same day the Court granted the motion.[8]   One week later, counsel discussed all outstanding discovery issues and ultimately concluded they were at an impasse.[9]   Defendant once again sought and was granted an extension of time to file a motion to compel,[10] and on July 22, 2016, he timely filed the instant motion.

The Court finds that the parties have conferred in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

## II.   Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery.   As recently amended, it provides as follows:

---

[4] *See* ECF No. 22.

[5] Declaration of Michael L. Matula (ECF No. 33-1).

[6] *Id.*

[7] *Id.*

[8] ECF Nos. 27, 28.

[9] ECF No. 33-1.

[10] ECF Nos. 29, 30.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[11]

Considerations of both relevance and proportionality now govern the scope of discovery.[12] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[13] Information still "need not be admissible in evidence to be discoverable."[14]   The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[15]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[16]   Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations.   If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the

---

[11] Fed. R. Civ. P. 26(b)(1).

[12] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[13] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[14] Fed. R. Civ. P. 26(b)(1).

[15] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[16] *Id.*

pre-amendment Rule.[17]   In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[18]   Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[19]   Relevancy determinations are generally made on a case-by-case basis.[20]

With respect to a claim that a document or information is entitled to the limited "Attorney's Eyes Only" level of confidentiality, the party seeking to resist disclosure under a general confidentiality agreement has the burden to make a particular and specific demonstration of facts showing how disclosure might be harmful.[21]

In making its initial Rule 26 disclosures, a party is required to provide a computation of any category of damages it is claiming.   The general rule is that a defendant is entitled to a specific computation of damages and to have made available for inspection and copying the documents and other evidentiary material on which such computation is based.[22]

---

[17]  *Id.*

[18]  *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[19]  *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[20]  *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[21]  *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007) (citations omitted).

[22]  *Kleiner v. Burns*, No. 00-2160-JWL, 2000 WL 1909470, at *2 (D. Kan. Dec. 22, 2000).

### III.   Analysis

Defendant raises issues with respect to Plaintiff's Rule 26 disclosures and Plaintiff's objections to certain interrogatories.   The Court considers each in turn.[23]

### A.      Interrogatory Nos. 1, 3, and 4

Defendant requests in his motion that the Court overrule Plaintiff's objections to certain interrogatories.   Defendant asserts that the interrogatories are appropriately limited to seek only material facts (as opposed to all facts), and that each is directed to particular and specific allegations in Plaintiff's complaint.   Plaintiff objects to each as unduly burdensome, asserting that Defendant is asking for information he already knows.   But Plaintiff goes on to provide an answer to these interrogatories "subject to" his objections.

The interrogatories are as follows:

Interrogatory No. 1: State the material facts supporting your allegation that "Peck directly, or through others, threatened hibu employees in the Wichita and adjoining markets that if they did not leave their employment with hibu and become employed with Dex, Peck would take the customers away from them," as alleged in Paragraph 32 of the Complaint. Your answer should include, among other responsive information, the names of anyone who was allegedly threatened, the manner of the threat (in-person, by phone, by electronic communication, etc.) and the date of the alleged threat(s) and anyone who was involved in making such a threat on Peck's behalf.

Interrogatory No. 3: Identify the specific "customers and employees" who you are referring to in Paragraph 43 of the Complaint.

Interrogatory No. 4: Identify the specific "Confidential and Proprietary Information" referred to in Paragraph 43 of the Complaint, or which you otherwise contend Peck has used in a manner that violates any obligations he has to hibu.

---

[23]  In his motion, Defendant raised a fourth issue concerning Plaintiff's objection to producing documents in response to Request for Production No. 4 based on attorney-client privilege. Plaintiff's response includes the minimum information Defendant offered to accept in lieu of a privilege log, which Defendant acknowledges in his reply.   While the issue has been resolved, Defendant asserts that he should not have had to file a motion to obtain this information.

Clearly, each of these interrogatories addresses specific facts Plaintiff alleges in its complaint, which is precisely within the scope of discoverable information.[24]   The only explanation Plaintiff offers for its objection that answering would be "unduly burdensome" is Plaintiff should not have to provide information to Defendant that Defendant already knows.   But as Defendant points out, he denies the allegations Plaintiff makes in paragraphs 32 and 43 of his complaint, so Defendant does not already know the information he seeks.   Even giving Plaintiff the benefit of the doubt that Defendant is not wholly ignorant of Plaintiff's claims, Defendant is still entitled to know what material facts Plaintiff intends to rely on to support those claims.[25] Plaintiff has the burden to show that responding to the interrogatories would be unduly burdensome, and the burden is unreasonable in light of the benefits to be secured from the discovery.[26]   Absent a showing by Plaintiff that Defendant's interrogatories are burdensome and not proportional to his needs in the case—and Plaintiff has made no such showing[27]—the Court finds that Plaintiff's objections are unfounded.

The Court notes that in each of the three interrogatory responses at issue, Plaintiff has objected and then provided an answer "subject to" its objections.   The Court finds that Plaintiff's answers constitute conditional objections.   Conditional objections occur when "a party asserts

---

[24] "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."   Fed. R. Civ. P. 33(a)(2).   Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   Fed. R. Civ. P. 26(b)(1).

[25] "Discovery has been allowed even though the facts are not exclusively or peculiarly within the knowledge of the party from whom discovery is sought, and it is not usually ground for objection that the information is equally available to the interrogator."   8 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer, Adam N. Steinman, Federal Practice and Procedure § 2014 (3d ed. 2014).

[26] *Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003).

[27] Mere general assertions that the interrogatories are unduly burdensome are insufficient.

objections, but then provides a response 'subject to' or 'without waiving' the stated objections."[28]

Judge O'Hara has written a thoughtful examination of conditional objections which catalogs the reasons various courts have given as to why such objections are invalid and unsustainable.[29]   Among the reasons is that objections followed by an answer "preserve nothing and serve only to waste the time and resources of both the Parties and the Court."[30]   As another court noted, "answering subject to an objection lacks any rational basis.   There is either a sustainable objection to a question or request or there is not."[31]   Rule 33 demands an answer to an interrogatory or an objection.   The discovery rules contemplate no other response.

The Court finds that Plaintiff has waived its objections to Interrogatory Numbers 1, 3, and 4, and the Court grants Defendant's motion with respect to those responses.

### B.       Documents Designated "Attorney's Eyes Only"

Among the documents Plaintiff produced pursuant to its initial disclosures are nine pages marked "Confidential – Attorney's Eyes Only."[32]   These include emails between hibu employees, a blank hibu employee agreement, and the invoices to hibu from recruiting firms.   Defendant argues the documents should be redesignated as "Confidential" because counsel's inability to

---

[28] *Westlake v. BMO Harris Bank N.A.*, No. 13-2300-CM-KGG, 2014 WL 1012669, *3 (D. Kan. March 17, 2014) (citing *Sprint v. Comcast Cable Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 1569963 (D. Kan. April 18, 2014) *("Sprint II")*.

[29] *Sprint v. Comcast Cable Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 545544 (D. Kan. Feb. 11, 2014) (*"Sprint I"*).

[30] *Id.* at *2 (quoting *Consumer Elecs. Ass'n v. Compras and Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008)).

[31] *Sprint I*, 2014 WL 545544, at *3 (quoting *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *2 (M.D. Fla. April 29, 2011)).

[32] These documents are contained in a sealed document filed at ECF No. 36.

share them with Peck is prejudicing his defense, and the documents contain no confidential or proprietary information that justifies the special confidentiality associated with the Attorney's Eyes Only designation.

Plaintiff argues that the emails between hibu employees should retain the "Attorney's Eyes Only" designation because they reveal how hibu perceives its competition from Dex Media, Defendant's current employer and Plaintiff's competitor.   Plaintiff further asserts that even if its perception is wrong, Dex Media could exploit the information to gain a competitive advantage in the marketplace.   As for the blank employee agreement and the recruiting invoices, Plaintiff argues that it competes with Dex Media to recruit sales representatives from largely the same talent pool, and Dex Media could gain a competitive advance if Dex knew what employee agreement hibu uses or what recruiting firms hibu employs and how much it pays them.

Dex Media is not a party to this action, nor does it fit into any of the categories of designees to whom the parties may disclose confidential information under the Protective Order.[33] Defendant contends that marking the documents as "Confidential" affords Plaintiff the protection it seeks, as Peck and his counsel are prohibited from giving Confidential documents to Dex absent Plaintiff's consent.   If defense counsel is precluded from sharing and discussing the documents at issue with Peck, however, he argues that Peck will be prejudiced by not being able to consult with his counsel about information counsel asserts is necessary for his defense.

"A party seeking that its information only be revealed in a certain way, such as limiting who can view or access the materials, under Rule 26(c)(1)(G) must first establish that the information sought is a trade secret or other confidential research, development, or commercial

---

[33] *See* ECF No. 16 at 4.

information."[34]   Once established, the party must also show the harm that might result from

disclosure; at that point the burden shifts to the opponent to establish that the requested disclosure

is relevant and necessary to the action.[35]   The Court finds that Plaintiff has not met its burden to

show the documents it has designated as "Attorney's Eyes Only" warrant the additional protection

afforded by Rule 26(c)(1)(G).

With respect to the blank employment agreement, Plaintiff does not point to a single

distinguishing characteristic that would require it to have a more restrictive designation than the

employment agreement Defendant signed.[36]

As for the emails between hibu employees, Plaintiff asserts they are entitled to heightened

protection because they "reveal how hibu conceives [sic] of its competition from Dex Media."[37]

While there may be some kernel of truth to that, Plaintiff does not make a showing that the

information qualifies as its "confidential research, development, or commercial information."

Plaintiff does not identify the job title or position of the author or recipient of the emails, which

admittedly contain rumors and conflicting information concerning Peck's alleged employers.   As

for the recruiting firm invoices, which contain nothing more than an amount due, the Court rejects

Plaintiff's argument that Dex Media could gain a competitive advantage in the market for qualified

and talented salespeople if it knew what recruiting agencies Plaintiff uses.   Moreover, applying

the "Confidential" designation to the invoices prevents their disclosure to Dex Media without

---

[34] *Suture Express, Inc. v. Cardinal Health, LLC*, No. 12-2760-RDR, 2013 WL 6909158, at *6 (D. Kan. Dec. 31, 2013) (citation omitted).

[35] *Id.*

[36] Plaintiff attached Defendant's signed employment agreement as an exhibit to its complaint. *See* ECF No. 1-1.   Clearly, Plaintiff can claim no confidentiality with respect to the agreement.

[37] ECF No. 40 at 5.

Plaintiff's permission.[38]

Plaintiff has not satisfied its burden under Rule 26(c)(1)(G).   The Court directs Plaintiff to redesignate the documents at issue as "Confidential."

### C.   Damages Computation

In its initial disclosures, Plaintiff provided no computation of each category of damages it claims as required by Fed. R. Civ. P. 26(a)(1)(A)(iii).   When pressed to do so by Defendant, Plaintiff provided some information in its First Supplemental Initial Disclosures and stated it would further supplement the disclosure as additional facts become available.[39]   Defendant contends the information is not sufficient to satisfy Plaintiff's obligation to provide "a computation of each category of damages claimed by the disclosing party—who must also make available . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."[40]

Plaintiff denies that it has not met its obligations, stating that it has presented five categories of damages and attached numerical values to those categories where possible.   In fact, Plaintiff's only disclosure relating to damages is contained in its supplemental disclosures served on June 23, 2016.[41]   In it, Plaintiff identifies the same five categories it lists in its response to Defendant's motion:   lost revenue, training and recruitment costs, cover damages, Defendant's

---

[38]   In its response to Defendant's argument that Plaintiff has not provided its damages computation, Plaintiff states that the amounts it has paid to various recruiting agencies to obtain sales staff constitute its damages associated with training and recruitment costs.   Peck is entitled to know what damages Plaintiff seeks to recover from him.

[39]   *See* ECF No. 33-4 at 6-9.

[40]   Fed. R. Civ. P. 26(a)(1)(A)(iii).

[41]   ECF No. 33-4 at 6-9.

severance, and corporate goodwill.   But Plaintiff does not provide a computation for any of the five categories, and provides a lump sum dollar figure for only one.   Plaintiff's supplemental disclosure states as follows with respect to lost revenue:

> Plaintiff has approximately $7,000,000 in annual revenue at risk due to Defendant's actions.   That amount is the amount of Plaintiff's annual revenue that was serviced by the six former employees of Plaintiff that were solicited by Defendant to join Dex Media.   That amount does not take into account future revenue that would have been earned by Plaintiff absent Defendant's wrongful conduct. Accordingly, Plaintiff may supplement this disclosure.[42]

Contrary to its position, Plaintiff's statement of the amount of annual revenue "at risk" is not a computation of the damages it had suffered as of the date of its supplemental disclosures. Plaintiff's indication that it may further supplement its disclosures was directed only to future lost revenue.    Plaintiff alleges that Defendant left hibu's employment on January 2, 2015, and that sometime in the succeeding twelve months he began working for Dex Media.   Sufficient time has passed for Plaintiff to be able to provide a computation of the damages it claims.

Plaintiff offers no support for its position that it can satisfy Rule 26(a)(1)(A)(iii)'s computation requirement by stating its damages for training and recruitment costs are contained in documents it has produced.   Moreover, were that the case, Plaintiff's response to the instant motion should have specified which documents contain those costs and pointed to the calculations contained therein.

Plaintiff has not complied with its disclosure obligations under Rule 26(a)(1)(A)(iii). Within ten (10) days of the date of this order, Plaintiff shall provide a computation of its damages and make available the documents described in Rule 26(a)(1)(A)(iii).

## IV.    Sanctions

---

[42] ECF No. 33-4 at 7.

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court must, after giving an opportunity to be heard, require the responding party to pay the movant's reasonable expenses and attorney's fees incurred in making the motion.[43]   The court must not order payment, however, if the opposing party's nondisclosure, response, or objection was substantially justified, or if other circumstances make an award of expenses unjust.[44]   The Court finds that Plaintiff's actions were not substantially justified, and no circumstances exist which would make an award unjust. Accordingly, unless by then the parties have resolved this case through mediation or otherwise, no later than **September 30, 2016**, Defendant shall file a response setting forth the amount he requests, along with an affidavit itemizing the reasonable expenses and attorney's fees he incurred in bringing the instant motion.   Plaintiff shall have until **October 14, 2016** to file a response thereto.   The Court will thereafter enter an order specifying the amount of the award and the time of payment.

   **IT IS THEREFORE ORDERED THAT** Defendant's Motion to Compel Discovery (ECF No. 32) is **GRANTED.**   Plaintiff's objections to Interrogatory Nos. 1, 3, and 4 are **OVERRULED.**

   **IT IS FURTHER ORDERED THAT** Plaintiff redesignate as "Confidential" the documents contained in ECF No. 36, currently designated as "Confidential-Attorney's Eyes Only."

   **IT IS FURTHER ORDERED THAT** no later than **September 19, 2016**, Plaintiff shall provide a computation of its damages and make available the documents described in Rule 26(a)(1)(A)(iii).

---

[43] Fed. R. Civ. P. 37(a)(5)(A).

[44] Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).   The rule also provides no such payment shall be awarded if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action.   Fed. R. Civ. P. 37(a)(5)(A)(i).   The Court has found to the contrary.

**IT IS FURTHER ORDERED THAT** unless by then the parties have resolved this case through mediation or otherwise, no later than **September 30, 2016**, Defendant shall file a response setting forth the amount he requests, along with an affidavit itemizing the reasonable expenses and attorney's fees he incurred in bringing the instant motion.   Plaintiff shall have until **October 14, 2016** to file a response thereto.

**IT IS SO ORDERED.**

Dated this 8th day of September, 2016, at Kansas City, Kansas.

*s/ Teresa J. James*
Teresa J. James
U.S. Magistrate Judge