# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| hibu INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 16-cv-1055-JTM-TJJ |
| | ) |
| CHAD PECK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

During a February 6, 2017 in-person discovery conference, one of the issues the Court discussed with counsel was the "Attorney Eyes Only" ("AEO") designation Dex One Service, Inc. placed on many of the documents it produced to Plaintiff pursuant to Plaintiff's Rule 45 subpoena (ECF No. 74). This was not the first discussion about the issue, but as it became clear that the parties were at an impasse, the Court ruled as follows:

> Defendant continues to designate approximately 3,700 documents as AEO.[1] Because discovery is rapidly drawing to a close and counsel have exhausted their ability to narrow this number, the Court direct[s] each party to choose 8 documents and provide copies of those documents to Judge James, and further direct[s] Defendant to provide Judge James with a list of the document numbers of the documents it continues to designate as AEO. From that list, the Court will randomly choose 25 to 30 documents. After reviewing the documents just described, the Court will rule on whether the documents should retain their AEO designation.[2]

The parties have made their submissions and the Court has reviewed the documents, some of which are quite lengthy. For the reasons that follow, the Court will not require the AEO

---

[1] Although these are documents produced by Dex and not by Defendant (who is now employed by Dex), Defendant's counsel is also representing Dex in all matters related to the Rule 45 subpoena. The Court's reference to "Defendant" in this minute sheet is a shorthand reference to Defendant's counsel.

[2] Minute Sheet from 2/6/2017 conference (ECF No. 132 at 3).

1

designation to be removed from all but one subset of documents.

The Court has considered a number of factors in reaching its decision, beginning with the agreed protective order entered in this case. In a paragraph entitled "Definition of Confidential Information and Confidential—Attorney's Eyes Only Information," the order states as follows:

> As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use is restricted by statute or could potentially cause harm to the interests of disclosing party or nonparties. "Confidential – Attorney's Eyes Only" information is a subset of "Confidential Information" and shall be treated as "Confidential Information" subject to any specific provisions of this order addressing "Confidential – Attorney's Eyes Only" information.[3]

While the documents in question have not been produced by a party, the protective order contains an agreement that its provisions extend to confidential information produced in the case by third parties upon timely request from the third party.[4] The parties' conduct indicates Dex made such a request. And to be clear, Dex has produced to Plaintiff all 3,700 documents in question, limiting the issue at hand to whether Dex has properly designated the documents AEO. As Plaintiff has made no challenge to a confidential designation for the Dex documents, any such document stripped of its AEO designation will continue to be treated as confidential.

Plaintiff has challenged the AEO designation, and Dex has the burden to prove the designation is warranted. In reviewing a challenge, the Court must

> balance the risk of inadvertent disclosure to competitors against the risk of prejudice to the other party's ability to prosecute or defend the present action. When balancing these risks, courts should consider whether the prohibited individual 'would be virtually unable to compartmentalize the information and not use the information to seek or gain an unfair competitive advantage.'[5]

---

[3] ECF No. 16 at 2.

[4] *Id.* at 8.

[5] *Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 12-2760, 2013 WL 6909158, at *7 (D. Kan. Dec. 31, 2013) (internal citation omitted).

The Court notes that Plaintiff brought this action against Chad Peck only. While the Court intends no criticism of Plaintiff's decision and none should be inferred, the Court finds relevant the fact that hibu and Dex are strong business competitors who fiercely resist providing access to each other's confidential information. Dex argues the documents at issue deserve AEO protection because they fall into one of the following categories:

- Pricing information (including prices of particular ads, "proposal approval requests," how much a client paid, discounts, "marketing service agreements," etc.);
- The sales representatives' sales numbers (sold lists with payment information, lead lists, accounts solicited lists, etc.);
- The sale representatives' compensation structure (offer letters including compensation, strategy re: percentage of commissions, etc.);
- Distribution numbers (including the amount of books distributed to each market, and strategy discussions about same);
- Any references to User Friendly, or any other entity Dex discussed acquiring; or
- Strategy discussions regarding Peck managed markets (see attached as "Market Strategy" and "Market Strategy 2").[6]

The Court finds that with this articulation, Dex has met its burden to show the risk of competitive harm it could suffer if hibu personnel had access to the documents.[7] As the Court noted in an earlier Memorandum and Order ruling on a motion to compel in this case, Defendant has provided interrogatory answers which identify the businesses he had personally contacted since joining Dex Media; to the extent he knew of them, the businesses solicited or attempted to be solicited by the sales representatives who left hibu and joined Dex Media; and the hibu employees Defendant communicated with after he left hibu including text messages with the identified

---

[6] January 25, 2017 Braun email to Kenney.

[7] Another relevant factor is that hibu's in-house counsel is permitted to view these documents, which provides litigation counsel the opportunity to discuss them with his client. While litigation counsel argues he should be allowed to show the documents to hibu sales personnel, the Court does not presume in-house counsel has no knowledge of hibu's sales activities.

individuals.[8]

Based on the Court's review of the documents and considering the quantity and nature of Dex information Defendant has produced in discovery, along with the lack of a compelling counter argument by Plaintiff, the Court finds with one exception the documents may retain their AEO designation.

The exception is transcripts of text message exchanges. In the transcripts the Court reviewed, some do contain names of contacts and possible leads for sales. As noted above, however, Defendant already has provided much of this information in his interrogatory answers. The transcripts otherwise primarily contain very limited pricing information, wholly irrelevant social pleasantries and personal conversations, and comments about Plaintiff that Defendant may prefer Plaintiff's employees not see but that do not constitute information from which Plaintiff could gain a competitive advantage. Accordingly, Dex shall de-designate documents containing text message exchanges.

The Court makes one additional note. Not surprisingly, the exemplars the parties hand-picked for the Court to review represent the ends of the spectrum of confidentiality. The documents Defendant submitted contain pricing, distribution, and confidential product information. On the other hand, Plaintiff submitted documents containing a text exchange about baseball results and general questions. It is difficult to discern a reason for a document such as Bates number DEX000059 to be worthy of confidential designation, let alone the extra protection of AEO. In addition, during the February 6, 2017 discovery conference, the Court ordered defense counsel (who also represents Dex) to supplement its production as to certain subpoena requests, which may affect the claim of confidentiality or AEO to some of the documents at issue.

---

[8] November 17, 2016 Memorandum and Order (ECF No. 103).

The Court reminds Dex's counsel of the continuing application of the protective order in this case and that by marking a designated document as confidential or AEO, counsel certifies the document contains confidential information as defined in the protective order.[9]

IT IS THEREFORE ORDERED that within five business days of the date of this order, counsel for Dex shall remove the AEO designation from documents which consist of transcripts of text message exchanges.

**IT IS SO ORDERED.**

Dated this 13th day of March, 2017, at Kansas City, Kansas.

*s/   Teresa J. James*
Teresa J. James
U.S. Magistrate Judge

---

[9] *See* Protective Order (ECF No. 16) at 3.