IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HIBU, INC.,

   Plaintiff,

v.

                Case No. 16-1055-JTM

CHAD PECK,

   Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff Hibu Inc.'s motion to disqualify attorneys Eric Leon, Kuangyan Huang, and Nathan Taylor from representing defendant Chad Peck, who is employed by Dex Media, in this litigation pursuant to Kansas Rule of Professional Conduct ("KRPC") 1.9(a), (b) and 1.10(a)[1] (Dkt. 253). These three attorneys were formerly associated with Kirkland & Ellis LLP ("Kirkland"). Plaintiff contends that while Leon, Huang, and Taylor were employed at Kirkland, they could not provide conflict-free representation to defendant. Plaintiff argues that their conflict was not removed after they switched to Latham & Watkins LLP ("Latham"). For the reasons stated below, plaintiff's motion is granted in part and denied in part without prejudice.

  **I.  Nature of the Case**

---

[1] Plaintiff does not seek imputed disqualification of Latham pursuant to KRPC 1.10(b), which would require a hearing. *Chrispens v. Coastal Ref. & Mktg., Inc.*, 257 Kan. 745, 756–57, 897 P.2d 104, 114 (1995). "No such requirement exists under MRPC 1.9(a)." *Id.*

Plaintiff employed defendant as a sales manager in Wichita and surrounding markets. Both parties signed an employment agreement on May 23, 2006.

In January 2015, defendant left plaintiff's employment and began working with Dex Media—plaintiff's direct competitor. Based on defendant's work on Dex Media's expansion into Wichita and other Kansas markets, plaintiff commenced this litigation in February 2016, arguing that defendant breached his employment agreement and tortuously interfered with plaintiff's business expectancy.

## II. Kirkland's Prior Representation of Plaintiff

Kirkland previously represented plaintiff in a lawsuit against Mr. Joseph Walsh, plaintiff's former Chief Executive Officer ("CEO"), in which plaintiff sought damages and injunctive relief against Walsh for: breach of his employment separation agreement; improper use of plaintiff's confidential information; making untrue, negative and derogatory statements about plaintiff and its management; procurement of plaintiff's confidential information by improper means; conversion of plaintiff's confidential information; aiding and abetting breach of fiduciary duty by other plaintiff executives; and civil conspiracy. Plaintiff claimed that Walsh—who is presently Dex Media's CEO—obtained confidential material from Messrs. James McCusker, Mark Cairns, and John Gregory, three senior executives who were employed by plaintiff at that time. McCusker is now the Chief Revenue Officer of Dex Media. Gregory is a vice president of Dex Media. Cairns is, or until recently was, Dex Media's Executive Vice President of Operations and Client Services.

During Kirkland's representation of plaintiff in the Walsh matter, Kirkland had extensive communications with plaintiff's senior management and worked closely with its general counsel. Kirkland investigated Walsh's conduct and provided guidance as to the conduct of interviews by plaintiff of potential witnesses, including McCusker and Gregory.

Kirkland also defended plaintiff in McCusker's (plaintiff's former president) and Cairns's (plaintiff's former Chief Operations Officer) lawsuits against plaintiff for defamation and violation of Pennsylvania's wage law. These lawsuits followed plaintiff terminating McCusker's and Cairns's employment for providing confidential information to Walsh and for other reasons.

In a fourth matter, Kirkland served as U.S. counsel to plaintiff and Hibu Group in connection with their financial restructuring. In the course of that representation, Kirkland was given access to and reviewed highly confidential, proprietary, and commercially sensitive information, including information pertaining to plaintiff's business strategy, business plans, business practices, historic financial data, financial projections, product strategy, employee data, debt structure, executory contracts, contingent obligations, and pending litigation.

Plaintiff claims that Leon's practice group at Kirkland handled the Walsh, McCusker, and Cairns cases. Specifically, at least 15 attorneys from both Kirkland's Chicago and New York offices were involved in the Walsh litigation generating over $920,000 in legal fees. Approximately eight Kirkland attorneys were involved in the McCusker and Cairns matters, and generated over $215,000 in legal fees. Kirkland

withdrew from representing plaintiff in the McCusker and Cairns matters in late 2014. The McCusker and Cairns cases were pending when this current litigation commenced. In the financial restructuring matter, more than 30 Kirkland attorneys were involved, and Kirkland received over $3,200,000 in legal fees.

On April 4, 2017, Leon and Huang were attorneys with Kirkland, and were admitted pro hac vice to represent defendant against plaintiff in this case.[2] One day later, plaintiff advised Kirkland that it objected to its representation of defendant. According to plaintiff, Kirkland referred the matter to its internal committee, and subsequently informed plaintiff that it would withdraw from this case on April 9, 2017. On May 17, 2017, approximately five weeks later, Leon and Huang both filed notices of their withdrawal as counsel for defendant.

After Leon and Huang withdrew from representing defendant, they joined Latham and again moved to appear pro hac vice on July 7, 2017.[3] Taylor, also associated with Latham, moved to appear pro hac vice. Magistrate Judge James granted all three motions on July 10, 2017.

### III. Legal Standards

---

[2] Ogletree, Deakins, Nash, Smoak & Stewart, P.C. previously represented defendant in this case, but withdrew on May 23, 2017. Two attorneys from Stinson Leonard Street are local counsel for defendant.

[3] Defendant briefly argues that plaintiff's delay in seeking disqualification warrants denial of this motion. The court finds no delay as plaintiff objected to Kirkland's representation on April 5, 2017, the day after Leon and Huang entered their appearances. On April 9, 2017, Kirkland informed plaintiff that it would withdraw from the case. Notably, Kirkland took approximately 38 days to prepare and file a two-page notice of withdrawal for each attorney whereas plaintiff took approximately 21 days to prepare and file a motion to disqualify supported by a 23-page memorandum and 23 exhibits. Defendant's argument is without merit.

4

"The court has inherent supervisory powers to control attorneys and motions to disqualify counsel are committed to the court's sound discretion." *Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, 261 F.R.D. 586, 589 (D. Kan. 2009). When deciding a motion to disqualify, the court reviews the unique facts of the case and balances competing considerations. *McDonald v. City of Wichita, Kan.*, No. 14-1020-GEB, 2016 WL 305366, at *3 (D. Kan. Jan. 26, 2016). Such considerations include: (1) the privacy of the attorney-client relationship; (2) the prerogative of each party to choose its own counsel; (3) and the hardships that disqualification would impose upon the parties and the entire judicial process. *Id.* The court is mindful that the parties' arguments can be misused as a litigation tactic or technique of harassment. *Id.* ("A motion to disqualify counsel deserves serious, conscientious, and conservative treatment.").

A federal court sitting in Kansas and deciding a motion to disqualify for conflict of interest must look for guidance to the Model Rules adopted in Kansas and to Kansas case law construing those rules. *See Graham ex rel. Graham v. Wyeth Labs.*, 906 F.2d 1419, 1422–23 n.5 (10th Cir. 1990). Plaintiff's motion is therefore governed by KRPC 1.9 and 1.10.

KRPC 1.9 provides, in part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
(1) whose interests are materially adverse to that person; and

5

> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
> Unless the former client gives informed consent, confirmed in writing.

Disqualification of an attorney is justified under KRPC 1.9 when the facts demonstrate that "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant." *Weeks v. Indep. Sch. Dist. No. I–89 of Okla. Cty.*, 230 F.3d 1201, 1212 (10th Cir. 2000). The burden is on the moving party to show the existence of the conflict. *Briggs v. Aldi, Inc. (Kan.)*, 218 F. Supp. 2d 1260, 1267 (D. Kan. 2002). If the movant establishes the first two prongs, an irrebuttable presumption arises that the client has revealed facts to the attorney that require the attorney's disqualification. *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)

KRPC 1.10 determines when a Rule 1.9 conflict is imputed to an entire law firm. *Monroe v. City of Topeka*, 267 Kan. 440, 446, 988 P.2d 228, 232 (1999). "In other words, under Rule 1.10, disqualification results from an attorney's affiliation with a firm rather than from a direct personal connection with the client in question." *Id.*

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
> (b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests

materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9 (c) that is material to the matter.
(c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.
(d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

IV. **Discussion**

Plaintiff asserts that Leon, Huang, and Taylor are disqualified from representing defendant in this litigation. Plaintiff does not specifically argue that Latham is disqualified under Rule 1.10(b), but plaintiff seeks "disqualification of Latham and its individual lawyers entering an appearance here." (Dkt. 254, at 22). However, in its reply, plaintiff only seeks to disqualify Leon, Huang, and Taylor. At this time it is unclear whether plaintiff seeks to disqualify Latham in its entirety. Additionally, motions to disqualify under KRPC 1.10(b) require a hearing—which neither party has requested—thus, the court will not consider whether the entire Latham firm is disqualified under KRPC 1.10(b). *See Chrispens v. Coastal Ref. & Mktg., Inc.*, 257 Kan. 745, 756–57, 897 P.2d 104, 114 (1995) (requiring a hearing for disqualification under KRPC 1.10(b), but not for 1.9(a)).

 *A. Substantially Related*

Plaintiff argues that Kirkland's prior representations of it in earlier litigations are substantially related to this action. "Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a

7

substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." KRPC 1.9 cmt. 3. The court evaluates the similarities between the factual bases of the relevant representations by "reconstruct[ing] the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client." *Briggs*, 218 F. Supp. 2d at 1267 (internal quotations and citations omitted). The court determines what confidential information and facts ought to have been or would typically be disclosed in such a relationship. *Id.* No single test exists; thus, the court determines if a substantial relationship exists on a case-by-case basis. *Flint Hills Sci., LLC. v. Davidchack*, No. 00-2334-JAR, 2002 WL 975881, at *6 (D. Kan. Mar. 21, 2002).

Since 2013, Kirkland has represented plaintiff in four significant lawsuits. During these lawsuits, plaintiff shared with Kirkland information about plaintiff's business and legal strategies relevant to its claims against Walsh as well as defenses to McCusker's and Cairns's claims and possible counterclaims. Plaintiff contends that it relayed to Kirkland extensive confidential business information, its policies and practices with respect to maintaining and using confidential information, and enforcement of its confidential information agreements with former employees. Plaintiff notes that Walsh, Gregory, and McCusker are identified as potential witnesses in this case. Furthermore, defendant is a direct competitor of plaintiff, and its interests in this current lawsuit are materially adverse to plaintiff.

In this case, just as in the Walsh, McCusker and Cairns matters, plaintiff claims misappropriation of its confidential commercial information. Kirkland has knowledge about plaintiff's business and employment practices. Leon, Huang, and Taylor were associated with Kirkland at the time it represented plaintiff in the other litigations in which other Kirkland attorneys gained confidential information and knowledge about plaintiff's pattern of conduct. Plaintiff is not required to disclose the actual confidential information that Kirkland has knowledge of. *See* KRPC 1.9 cmt. 3 ("A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."). Plaintiff has met its burden to show that the matter is substantially related to plaintiff's prior litigations, and the court next considers whether the conflict can be imputed to Leon, Huang, and Taylor.

  B. *Imputation*

Kirkland previously represented plaintiff in the Walsh, McCusker, and Cairns matters as well as in plaintiff's financial restructuring. Plaintiff refers to Leon and Huang's representation of defendant while they were attorneys with Kirkland and argues that they violated Rules 1.9(a), (b), and 1.10(a). Plaintiff states that Taylor also was associated with Kirkland prior to joining Latham, however, he did not initially enter his appearance in this case while employed with Kirkland.

Defendant responds that KRPC 1.9 is inapplicable because Leon, Huang, and Taylor, along with Latham, never "formerly represented" plaintiff in any matter or acquired confidential information about plaintiff. Defendant contends that any conflicts

9

that might have been imputed to Leon, Huang, and Taylor while associated with Kirkland evaporated when they moved to Latham.

The court disagrees with defendant's argument with respect to Leon and Huang—they entered their appearances on behalf of defendant while still associated with Kirkland.[4] Other Kirkland attorneys represented plaintiff in prior matters against Dex Media's senior executives. "Unlike Rule 1.10(b), subsection (a) of Rule 1.10 imputes disqualification to lawyers practicing together without regard to whether client confidences actually have been shared." *Monroe*, 267 Kan. at 447, 988 P.2d at 232. The underlying concern is the possibility, or appearance of the possibility, that Leon and Huang may have received confidential information during Kirkland's prior representations that would be relevant to the instant matter. *See McDonald*, 2016 WL 305366 at *5 ("The purpose behind the imputation is that 'a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.'").

On the other hand, Taylor's representation differs because he was never part of this case as a Kirkland attorney; thus, KRPC 1.9(b) applies to Taylor's circumstances. Plaintiff does not allege that Taylor personally represented plaintiff while at Kirkland; nor does it allege that he personally acquired any confidential information. Therefore, the court finds that imputation under 1.10(a) is inapplicable to disqualify Taylor.

---

[4] Plaintiff does not dispute that if Leon, Huang, and Taylor had first undertaken representation of defendant after they transferred to Latham, Rules 1.9(a) and 1.10(b) would be inapplicable. But Leon and Huang began representing defendant while at Kirkland, and their conflict did not "evaporate" when they changed firms.

## V. Conclusion

Under the present showing, the court finds that Leon and Huang are disqualified under KRPC 1.9(a) and 1.10(a) because they entered their appearance on defendant's behalf while associated with Kirkland. Leon and Huang are presumed to have been exposed to confidential information about plaintiff regardless of whether they worked directly on plaintiff's other litigations handled by Kirkland. However, Taylor did not represent defendant while he was still with Kirkland, and plaintiff does not allege that he acquired confidential information about plaintiff from Kirkland. Therefore, disqualification of Taylor is not necessary at this time. Furthermore, disqualification of the Latham firm is not proper without consideration of KRPC 1.10(b) and a hearing. In the event that plaintiff wants to pursue disqualification of the entire Latham firm, it must proffer specific confidential information that Taylor, or any other Latham attorney, acquired about plaintiff, and the court will conduct a hearing on the matter.

IT IS THEREFORE ORDERED this 5th day of October, 2017, that plaintiff's motion to disqualify Messrs. Eric Leon and Kuangyan Huang (Dkt. 253) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to disqualify Mr. Nathan Taylor and the law firm of Latham & Watkins LLP is denied without prejudice.

                                                      s/ J. Thomas Marten  
                                                      J. Thomas Marten, Judge