IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HIBU, INC.,

    Plaintiff,

v.

                                                                     Case No. 16-1055-JTM

CHAD PECK,

    Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff hibu, Inc.'s motion to exclude defendant Chad Peck's expert Rodney Sowards pursuant to Federal Rule of Evidence 702 (Dkt. 284). Plaintiff claims that certain opinions of Sowards's are not supported by sound accounting principles or accepted scientific methods, are outside Sowards's expertise, and/or are based on insufficient data or incorrect facts. For the reasons stated below, plaintiff's motion is denied in part and granted in part. Sowards's opinions concerning plaintiff's expectation that the six sale representatives would remain employed with plaintiff and severance are inadmissible. Sowards's remaining opinions are admissible at trial.

    **I.**    **Background**

Plaintiff seeks damages from five categories:

- lost revenue or lost profits from April 1, 2016, to March 31, 2017, for print services and from January 1, 2016, to December 31, 2016, for digital services;

- damage to corporate goodwill, which quantifies the reduction in the value of plaintiff's business caused by defendant's alleged wrongful actions;

- training and recruitment costs, which cover the direct costs incurred by plaintiff in connection with recruiting, hiring, and training sales employees to replace the six former sales representatives that defendant solicited to Dex Media;

- cover damages, which include costs related to the deployment of plaintiff's sales representatives from other markets to cover those canvasses and sales closes that should have been handled by the six former sales representatives that defendant solicited to Dex Media; and

- defendant's severance benefits

Defendant retained Sowards as its damages expert. Sowards disagrees with several of plaintiff's claims for damages and asserts that different calculations are warranted to accurately reflect plaintiff's actual losses resulting from defendant's actions.

**II.     Legal Standards**

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id.* at 589–93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147–48 (1999). If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

The court first considers whether the witness is qualified by "knowledge, skill, experience, training, or education" to render expert opinions. *Id.* Second, the court determines whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory comm. notes. The court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *See Kumho Tire*, 526 U.S. at 152.

### III.   Discussion

Plaintiff does not generally challenge Sowards's qualifications, but argues that his opinions are unreliable because they are unsupported, exceed the scope of his expertise, and are incomplete.

#### A.   Lost Revenue

Plaintiff contends that Sowards's opinion that plaintiff attributed 100% of the decline in its Wichita market revenue to defendant—thereby failing to account for lost revenue due to economy, competition, and individual account circumstances—is incorrect. Plaintiff states that Sowards disregarded the language in its Sixth Supplemental Initial Disclosure accounting for "previous year-over-year declines in print revenue and increases in digital revenue." (Dkt. 287, at 7). Plaintiff claims that it adjusted for the decline in print revenue within the Wichita market and attributed only an additional decline of 7.9% to defendant's actions. Likewise, plaintiff attributed only an additional increase of 10.3% in digital revenue to defendant's actions.

3

Defendant responds that Sowards did not state plaintiff attributed 100% of the decline in revenue to defendant's actions. Instead, Sowards opines that plaintiff attributed 100% of the variance (7.9% and 10.3%) in its revenue to defendant's alleged conduct, with no evidence to support that assertion. Sowards states that plaintiff utilized a general type of macro-trend analysis that is inferior to a specific customer analysis. Defendant asserts that a specific customer analysis is backed by AICPA guidelines and the Litigation Services Handbook.

The court finds that Sowards did not misinterpret the facts; he merely disagrees with plaintiff's methodology in calculating its lost revenue. Additionally, plaintiff has not met its burden to show that Sowards's use of a customer specific analysis to determine lost revenue is not a sound accounting methodology. Furthermore, plaintiff's concerns that Sowards "cherry-picked" raw data from other markets that experienced year-over-year declines in revenue without regression analysis, other statistical modeling, or identification of comparable factors go to the weight of his testimony, not its admissibility.

### B. Lost Profits

Sowards disagrees that the proper claim for damages is lost revenue—which does not factor in plaintiff's costs it would have incurred to earn this revenue. Instead, Sowards opines that the proper damages claim is lost profits—lost revenue minus avoided costs—and provides an alternative calculation of lost profit damages. Sowards noted that he was missing information regarding plaintiff's avoided costs and did not

complete the calculation for lost profits in his report. Plaintiff argues that Sowards's opinion on lost profit damages is incomplete and should be excluded.

Sowards provided a summary of an alternative calculation of lost profit damages in his report. (Dkt. 287-1, at 14). Because he did not have plaintiff's avoided costs at the time he prepared the report, March 3, 2017, he noted those figures were "to be determined" or "TBD."[1]

| Table 3: Alternative Calculation of Lost Profit Damages ||||
|---|---|---|---|
| Damages Component | Digital | Print | Total |
| Lost Revenue | $46,140 | $219,097 | $265,237 |
| Avoided Costs | TBD | TBD | TBD |
| Lost Profits | TBD | TBD | TBD |

Source: Attachment A

The court is aware of the parties' antagonistic history concerning the timing of plaintiff's disclosures; Judge James's order; and defendant's motion to strike and recent deposition of plaintiff's expert, Steve Browne. But it mostly irrelevant. Presently, there are two missing components from Sowards's calculation: Avoided Costs and Lost Profits. Plaintiff has been aware of Sowards's formula for determining lost profit damages for over nine months. And plaintiff has always been aware of its own avoided costs. Therefore, there is nothing to supplement in Sowards's report; the parties simply

---

[1] Plaintiff provided its actual costs data in its Sixth Supplemental Initial Disclosures and served it on defendant on May 26, 2017. (Dkt. 192).

need to fill in the blanks and perform the necessary subtraction. There is no surprise or unfairness, and the calculation for lost profit damages will be complete.

### C. Corporate Goodwill

Plaintiff designated its Chief Financial Officer, Bryan Turner, on the topic of damages. Sowards asserts that Turner testified in his February 16, 2017 deposition that goodwill "normally only comes into play when a business is acquired or disposed of." (Dkt. 287-1, at 11). Turner testified that no such transaction has occurred, nor is plaintiff currently recording goodwill on its books. Sowards also contends that Turner's measure of damages for goodwill double counts plaintiff's lost revenue claim and applies an unsupported multiplier of 1.255. Sowards further states that plaintiff cannot recover damages on both claims of lost revenue and loss to corporate goodwill because of this double counting.

Notably, Sowards offers no independent opinion on damages for plaintiff's loss to corporate goodwill. Instead, Sowards pokes holes in plaintiff's methodology in calculating its damages for loss of goodwill. Sowards's position that plaintiff is double counting and using an improper multiplier to figure goodwill damages goes to the weight of plaintiff's claim, operating more as a rebuttal opinion. Therefore, it is admissible.

### D. Training and Recruitment Costs and Cover Damages

Plaintiff claims $64,576 in damages for recruiting and training new sales representatives and $30,937 in cover damages for costs incurred to cover the ongoing canvasses and sales after the representatives left. Sowards asserts there is no

6

documentation that the six sales representatives were required to stay employed with plaintiff or that their canvasses and sales would continue without issue. Thus, there is no basis for plaintiff's claim as there would be an expectation of costs in recruiting and training new employees and covering current accounts. Sowards also states that plaintiff does not offset its damages for savings realized from less expensive sales representatives.

Sowards's argument that the six sales representatives were not required to stay employed with plaintiff misses the point. Plaintiff claims that defendant violated his own employment agreement not to solicit his former sales team. Plaintiff also claims that defendant tortiously interfered with plaintiff's individual employment contracts with the six sales representatives. There is a causal connection between defendant's actions, the representatives leaving plaintiff's employment, and plaintiff's costs incurred to replace and maintain the status quo due to the representatives' departure to Dex Media. Therefore, the court finds that Sowards's statement that there was no evidence that the sales representatives were required to stay employed with plaintiff is improper. Nor is it based on any specialized training that will assist the jury. However, Sowards may opine that plaintiff has not properly offset its costs for savings realized from less expensive sales representatives.

### D.   Severance

Sowards notes that plaintiff alleges defendant breached his employment contract, not his severance agreement. Sowards is unclear what basis plaintiff has to request damages from defendant's severance pay. The court finds that a jury does not

7

need assistance in understanding this concept, as it is a legal argument not based on any specialized knowledge or training. Therefore, Sowards's opinion on this matter is excluded under Fed. R. Evid. 702.

IT IS THEREFORE ORDERED this 28th day of December, 2017, that plaintiff's motion to exclude Sowards's expert report and testimony pursuant to Fed. R. of Evid. 702 (Dkt. 284) is denied in part and granted in part. Sowards's opinions concerning plaintiff's expectation that the six sale representatives would remain employed with plaintiff and severance are inadmissible. Sowards's remaining opinions are admissible at trial.

                                                                          s/ J. Thomas Marten
                                                        J. Thomas Marten, Judge